IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNA A. KEENER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THE UNIVERSAL COMPANIES, INC. F/K/A UNIVERSAL FOREST PRODUCTS, INC., UFP EASTERN DIVISION, INC. F/K/A UNIVERSAL FOREST PRODUCTS EASTERN COMPANY, INC., UFP SALISBURY, LLC, AND UNIVERSAL FOREST PRODUCTS, INC., | ) ) ) ) ) ) ) ) ) | CASE NO. 1:14 CV 982 |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

I.      **Statement of the Case**

Plaintiff filed the instant lawsuit on November 21, 2014 naming four (4) corporate

entities as Defendants and alleging the following: (1) pay discrimination, failure to

promote, harassment, and retaliation in violation of Title VII of the Civil Rights Act of

1964, as amended ("Title VII"); (2) pay discrimination in violation of the Equal Pay Act

("EPA"); (3) wrongful discharge in violation of public policy; (4) negligent hiring,

retention, and supervision; (5) intentional infliction of emotional distress ("IIED"); and

(6) negligent infliction of emotional distress ("NIED").  On January 16, 2015, Defendants

filed a motion to dismiss seeking to dismiss all claims and Defendants except <u>one</u> Title

VII retaliatory discharge claim as to <u>one</u> Defendant: <u>Defendant UFP Salisbury, LLC,</u>

which was Plaintiff's <u>only</u> employer during the relevant time period.  (Docs. 10, 11.)  In

an effort to avoid dismissal, on February 6, 2015, Plaintiff filed a twenty-two (22) page

Amended Complaint. (Doc. 15.) Plaintiff's Amended Complaint identifies the same four (4) Defendants and the same six (6) causes of action. Although Plaintiff's Amended Complaint contains some new factual allegations, these allegations remain insufficient as a matter of law, and Defendants again seek dismissal of all claims as to all Defendants except for one Title VII retaliation claim as to UFP Salisbury, LLC.

## II. Statement of the Alleged Facts Relevant to Instant Motion

### a. Males Purportedly Promoted to Supervisor in Plaintiff's Stead

Plaintiff's Amended Complaint alleges that she was employed by all four separate corporate entities as a shipping and receiving clerk from October 2004 until her March 2013 termination. (Doc. 15 at 5, ¶ 14.) Plaintiff claims she was required to perform the work of the shipping and receiving supervisor but was never promoted or paid for this position. (Doc. 15 at 5, ¶ 17.) Plaintiff alleges that, beginning in or around April 2008, the shipping and receiving supervisor position became vacant multiple times, and each time Plaintiff was passed over for the promotion and a male[1] was selected in her stead. (Doc. 15 at 6, ¶ 25; Id. at 7, ¶ 30; Id. at 8, ¶¶ 34-39; and Id. at 11, ¶¶ 67-68.)

### b. Males Purportedly Performing Shipping and Receiving Clerk Duties

Plaintiff's Amended Complaint alleges that a male named John Clark was a shipping and receiving clerk on the second shift at the time Plaintiff was terminated in 2013 and that Mr. Clark was earning more than Plaintiff. (Doc. 15 at 6, ¶21.) In

---

[1] Plaintiff's Amended Complaint alleges that the following males were selected for the supervisor position in her stead: Joe Black, Don Overman, Steve Hicks, Jeff Miller, and Richard Helms.

2

addition, Plaintiff alleges that a male named John Corriher was a shipping and receiving clerk on the first shift at the time Plaintiff was terminated in 2013 and that Mr. Corriher was earning more than Plaintiff. (Doc. 15 at 10, ¶¶ 51-52.)

Plaintiff alleges that, at the time of her termination in 2013, she was earning $14.57 per hour. (Doc. 15 at 5, ¶ 18.)

### c. Allegations Concerning John Corriher

Plaintiff's Amended Complaint alleges that, beginning in 2010 and "throughout Plaintiff's employment," Mr. Corriher was violent and disruptive, threw heavy objects such as paper weights in Plaintiff's direction, "popped" pills, was intoxicated at work, and, on one occasion, purportedly spit pieces of chewed up pills on Plaintiff's face. (Doc. 15 at ¶¶ 41-43.) Plaintiff also alleges that, on one occasion, Mr. Corriher operated a forklift while intoxicated. (Id. at 9, ¶ 49.)

Plaintiff also alleges that she learned Mr. Corriher "was a convicted felon, that he had served at least a year in prison for violent offenses including communicating threats and speeding to elude arrest, among other charges." (Doc. 15 at 9, ¶ 44.) Plaintiff does not allege when it was that she "learned" this alleged information.

### d. Allegations Concerning Plant Manager Phillip Hightower

Plaintiff alleges that Phillip Hightower cussed Plaintiff out over the telephone, retaliated against her after she purportedly reported the incident to Jeff Richard, continued to "harass" Plaintiff at "any opportunity that was available," said "it's time to clean the shack out, out with the old and in with the new" or "we need some young blood

in here" referring to Plaintiff working in the shipping and receiving department, that he was "constantly cussing" when he was around Plaintiff, that he would "walk by the Plaintiff and say 'hmmmm' in a disapproving manner while staring at the Plaintiff in a demeaning way," and that, on March 28, 2013, he ultimately fired Plaintiff. (Doc. 15 at 12, ¶¶ 71-76.)

Plaintiff also alleges that, after inquiring about the supervisor position, Mr. Hightower told Plaintiff that a woman's place should be barefoot and pregnant. (Doc. 15 at 10, ¶ 59.) On another occasion, Plaintiff alleges that Mr. Hightower picked up a chair and threw it across the room and started cussing. (Doc. 15 at 12, ¶ 73.)

### e. Plaintiff's Single EEOC Charge

On May 14, 2013, Plaintiff filed an EEOC Charge. (Doc. 15-2.) Plaintiff's EEOC Charge identifies "Universal Forest Product" at 358 Woodmill Road, Salisbury, North Carolina 28147 as the employer and Respondent. (Id.) This employer is identified as having over 100 employees. No other entity is identified on the Charge.

Plaintiff was assisted by counsel in preparing the EEOC Charge. (Doc. 10-1 at p.2.) Notably, Plaintiff only identified one date as the date on which the discrimination occurred: March 28, 2013, which was her termination date. Plaintiff did not check the box "continuing action" or identify an "earliest date." The entirety of Plaintiff's EEOC Charge allegations are as follows:

> I am a female. I began working for Respondent on or about October 7, 2004. I worked as a Shipping/Receiving Clerk. During my employment, I was discriminated against due to my sex (female). I complained about the discrimination but Respondent took no action. I was terminated on March

4

28, 2013.  I was advised that my termination was due to performance even though I had never been counseled, warned, or advised that my performance was not acceptable.  After I was terminated, I was replaced by a male.

I believe I have been discriminated against because of my sex (F) and subjected to retaliation due to my protected activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et. seq.

The EEOC issued a Dismissal and Notice of Right to Sue on August 25, 2014.  (Doc. 1-1.)  Plaintiff filed the instant lawsuit on November 21, 2014.  (Doc. 1).

### f. Information Regarding Universal Forest Products, Inc. ("UFPI") and The Universal Companies, Inc.

UFPI is a holding and asset management company incorporated in Michigan with its only place of business at 2801 E. Beltline Avenue, NE, Grand Rapids, Michigan.  As a holding company, UFPI owns independently operating subsidiaries engaging in a number of business activities.  (See Affidavit of Scott T. Bravata, hereinafter "Bravata Aff.," at ¶3.)  UFPI does not own any real property located in North Carolina.  (Id. at ¶4.)  UFPI does not operate a place of business in North Carolina. (Id. at ¶5.)  UFPI does not have a telephone number in North Carolina.  (Id. at ¶6.)  UFPI does not market or sell products in North Carolina.  (Id. at ¶7.)  UFPI does not manufacture or distribute products in North Carolina.  (Id. at ¶8.)

The Universal Companies, Inc. was incorporated in Michigan.  However, in 1993, this entity changed its name to Universal Forest Products, Inc.  In other words, The Universal Companies, Inc. became UFPI.  These are not two separate entities, and The Universal Companies, Inc. entity no longer exists.  (Id. at ¶9.)

5

Both UFP Eastern Division, Inc. and UFP Salisbury, LLC are wholly-owned subsidiaries of UFPI. (Id. at ¶10.) UFPI does not control the day-to-day operations of either UFP Eastern Division, Inc. or UFP Salisbury, LLC. (Id. at ¶11.) UFP Eastern Division, Inc. and UFP Salisbury, LLC are entirely separate legal entities that operate with separate managers, employees, assets, principal places of business, books, and records. (Id. at ¶12.) UFPI has never represented that its subsidiaries could act for or on behalf of UFPI. (Id. at ¶13.) UFP Eastern Division, Inc. and UFP Salisbury, LLC keep their own books and file their own income tax returns. (Id. at ¶ 14.) UFP Eastern Division, Inc. and UFP Salisbury, LLC are managed by their own managers, make their own personnel, managing, and marketing decisions, and they direct their own day-to-day operations. (Id. at ¶15.)

UFPI provides limited administrative services to UFP Eastern Division, Inc. and to UFP Salisbury, LLC through intercompany agreements. (Id. at ¶16.) As part of those intercompany agreements, UFPI employees perform some functions and services for Defendants UFP Eastern Division, Inc. and UFP Salisbury, LLC. For example, one such administrative service is "computer services," like the maintenance, operation, and staffing of website services and maintenance of a common email domain "ufpi.com." Virtually all of the email accounts for UFPI's operating subsidiaries are consolidated into the ufpi.com domain name, with a fee assessed to each subsidiary for such service. (Id. at ¶17.)

Ms. Hildebrand was the Director of HR Services for UFPI. Any involvement with Ms. Hildebrand and UFP Eastern Division, Inc. or UFP Salisbury, LLC would have been in her capacity as an UFPI employee and would have been within the context of the intercompany agreements to provide services to such entities. No employee of UFPI had involvement in Plaintiff's day-to-day supervision or discipline. (Id. at ¶18.)

UFPI had no notice that Plaintiff was making any allegations against it until it received Plaintiff's November 2014 Complaint. UFPI did not participate in the EEOC administrative process. (Because the Universal Companies, Inc. no longer exists, it did not participate in any administrative process for this claim, nor did it receive notice of the claim prior to Plaintiff's November 2014 Complaint.) (Id. at ¶21.)

### III.     Questions Presented

1.     Does this Court have personal jurisdiction over Defendants UFPI and The Universal Companies, Inc.?

2.     Does this Court have subject matter jurisdiction over Plaintiff's Title VII Claims for Pay Discrimination, Harassment, and Failure to Promote as to any Defendant?

3.     Does this Court have subject matter jurisdiction over Plaintiff's Title VII Claims as to the corporate Defendants other than UFP Salisbury, LLC?

4.     Has Plaintiff failed to state a claim upon which relief can be granted for all claims as to Defendants The Universal Companies, Inc., UFP Eastern Division, Inc., and UFPI?

5.    Has Plaintiff failed to state a claim upon which relief can be granted as to all Defendants with respect to her claims for violation of the Equal Pay Act, for wrongful discharge, for negligent hiring/retention/supervision, for IIED, and for NIED?

## IV.    Legal Argument

### a.    Defendants UFPI and The Universal Companies, Inc.[2] Must Be Dismissed Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction

When a defendant challenges a court's personal jurisdiction by a Rule 12(b)(2) motion, the issue is a matter of law for the court. *Combs v. Baker,* 886 F.2d 673, 676 (4th Cir. 1989). The Plaintiff bears the burden of establishing jurisdiction. *Hardee's Food Sys., Inc. v. Beardmore,* 169 F.R.D. 311, 313 (E.D.N.C. 1996); *see also In re Celotex Corp.,* 124 F.3d 619, 628 4th Cir. 1997); *Young v. F.D.I.C.,* 103 F.3d 1180, 1191 (4th Cir. 1997). As the United States District Court for the Eastern District of North Carolina recently summarized:

> For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be met: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *See Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statue is construed to give "the North Carolina courts the full jurisdictional powers permissible under federal due process," *Vishay Intertechnology, Inc. v. Delta Intern. Corp.,* 696 F.2d 1062,

---

[2] As noted herein, The Universal Companies, Inc. became UFPI in 1993. Thus, despite Plaintiff's case caption, these are not two separate entities. The Universal Companies, Inc. entity does not exist as a separate entity.

1065 (4th Cir. 1982), these inquiries collapse into one. *See ESAB Grp., Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir. 1997).

*Prometheus Grp. Enterps., LLC v. Viziya Corp.,* No. 5:14-CV-32, 2014 WL 3854812, at *2 (E.D.N.C. Aug. 4, 2014). A state may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman,* 134 S. Ct. 746, 754 (2014) (citations omitted).

### 1. UFPI (Formerly The Universal Companies, Inc.) Does Not Have the Requisite "Continuous or Systematic" Contacts with North Carolina Sufficient to Establish General Personal Jurisdiction

In order for a district court to exercise general jurisdiction over a defendant to hear any and all claims against it, that defendant's conduct with the forum state must be so *continuous and systematic* as to render them essentially at home in the forum state. *See Daimler AG v. Bauman,* 134 S. Ct. 746 (2014) (refusing to permit general all-purpose jurisdiction over Daimler AG even though the Mercedes vehicles it manufactures are sold by its subsidiary Mercedes-Benz USA in California dealerships and driven by citizens throughout California). As the U.S. Supreme Court expressed in its recent 2014 opinion, the mere fact that a manufacturer's products are bought or used in a state, is insufficient to subject the company to the general all-purpose jurisdiction in the state. *Id.*

Under this precedent, UFPI plainly fails to have a sufficient connection to North Carolina to permit general jurisdiction. UFP does not own any real property in North

9

Carolina, does not operate a place of business in North Carolina, does not have a telephone number in North Carolina, does not market or sell products in North Carolina, does not manufacture or distribute products in North Carolina. (Bravata Aff. ¶¶4-9.) UFPI is merely a holding and asset management company incorporated in Michigan with its only place of business in Michigan. (Id. at ¶3.) UFPI lacks any conduct which even *could* be considered so "continuous and systematic" as to render UFP essentially at home in North Carolina and, in the absence of any such connection to the State, should be dismissed for lack of personal jurisdiction.

### 2. Specific Personal Jurisdiction Over UFPI (Formerly The Universal Companies, Inc.) Does Not Exist

The second type of jurisdiction the Constitution allows is known as "specific jurisdiction." Specific jurisdiction is permissible "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.8 (1984). "Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S Ct. 2846, 2851 (2011). "To determine whether specific jurisdiction exists, a defendant must have purposefully availed itself of the privilege of conducting business within the forum state, giving it 'fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Prometheus Grp.*

10

*Enterps.,* 2014 WL 3854812, at * 3 (quoting *CFA Inst. V. Inst. Of Chartered Fin.*

*Analysts of India,* 551 F.3d 285, 293 (4th Cir. 2009)).

> A court thus considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting business in the state, (2) whether the plaintiff's claims arise out of those activities directed toward the state, and (3) whether the exercise of specific jurisdiction would be constitutionally reasonable to determine whether specific jurisdiction has been established. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002). "If, and only if, [a court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [it] move on to a consideration of prongs two and three." *Consulting Engineers Corp. v. Geometric Ltd.,* 561 F.3d 273, 278 (4th Cir. 2009). Specific factors a court may consider when determining whether a business entity has purposefully availed itself of the privilege of conducting business within the state include, but are not limited to whether the entity maintains offices or agents in the state, whether it owns property in the state, whether it reached into the forum state to solicit or initiate business, whether it engaged in significant or long-term business activities in the forum state, whether the entity made in-person contact with a resident of the forum state regarding the business relationship, and whether the parties agreed that the law of the forum state would govern interpretation of the contract. *Id.* (citations omitted).

*Id.*[3]

Here again, UFPI does not own any real property located in North Carolina, does

not operate a place of business in North Carolina, does not market or sell products in

North Carolina, and does not manufacture or distribute products in North Carolina.

---

[3] Notably, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [her]." *Walden v. Fiore,* 134 S. Ct. 1115, 1122 (2014).

11

(Bravata Aff. ¶¶4-8.) Plaintiff's Amended Complaint fails to allege facts sufficient to support a finding of specific jurisdiction as to UFPI (formerly The Universal Companies, Inc.), and the action should be dismissed as against UFPI (formerly The Universal Companies, Inc.).

### b. Most of Plaintiff's Title VII Claims Must Be Dismissed Under Fed. R. Civ. P. 12(b)(1) For Lack of Subject Matter Jurisdiction

#### 1. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Title VII Claims for Pay Discrimination, Harassment, and Failure to Promote as to All Defendants

Pursuant to Title VII, "an employee cannot seek redress in federal court for an employer's alleged discriminatory conduct unless [s]he filed a charge of discrimination with the EEOC within 180 days 'after the alleged unlawful practice occurred.'" *Hospodor v. Burlington Industries, Inc.*, 205 F.3d 1333, *1 (4th Cir. 2000) (citing 29 U.S.C. § 626(d) (1994), 42 U.S.C. § 2000e-5(e) (1994), and *McCullough v. Branch Banking and Trust Co*., 35 F.3d 127, 131 (4th Cir. 1994)). "The allegations contained in the administrative charge of discrimination generally limit the scope of any judicial complaint." *Id.* (citations omitted); *see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "Failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Hentosh v. Old Dominion University*, 767 F.3d 413, 416 (4th Cir. 2014); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir.2013); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)). The Fourth Circuit has stated:

In any subsequent lawsuit alleging unlawful employment

> practices under Title VII, a federal court may only consider those allegations included in the EEOC charge. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint.").
>
> +++
>
> In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency.

*Balas*, 711 F.3d at 407-08 (emphasis added). Notably, in *Balas*, the Fourth Circuit affirmed the dismissal of plaintiff's failure to promote and hostile work environment claims which were based on allegations <u>not</u> included in her EEOC Charge. *Id.* at 408-09.

EEOC charges that are too vague to give the employer notice of challenged conduct are simply insufficient to exhaust administrative remedies. *See, e.g., Manning v. Blue Cross and Blue Shield of Kansas City*, 522 Fed.Appx. 438 (10th Cir. 2013) (finding that, where EEOC charges completely lacked any factual specificity, failing to even describe the particular actions and practices complained of, the charges were insufficient to exhaust administrative remedies under Title VII); *Herbert v. Olympia Hotel Management LLC*, No. 3:13-CV-00015, 2014 WL 414227 (W.D. Va. Feb. 4, 2014) (noting that the Fourth Circuit "strictly enforces th[e] narrow scope of a plaintiff's right to sue" when dismissing the plaintiff's race discrimination claim for failure to exhaust his administrative remedies where his charge was too vague to cover the detailed allegations in his complaint); *Dasrath v. Stony Brook University Medical Center*, 965 F.Supp.2d 261 (E.D.N.Y. 2013) (dismissing plaintiff's harassment claim where the claim was not sufficiently described in the underlying EEOC charge).

13

Here, Plaintiff's EEOC charge does not even <u>mention</u> the term "harassment" (let alone provide <u>any</u> details of any purported unlawful harassment based on sex), does not even <u>mention</u> her "pay" or compensation, and does not even <u>mention</u> "failure to promote" or discuss <u>any</u> promotions she was purportedly denied because of her sex. Plaintiff's incredibly vague EEOC Charge merely states that she was terminated on March 28, 2013 in retaliation for allegedly making prior complaints of discrimination. <u>Thus, the only possible Title VII claim sufficiently described in Plaintiff's EEOC Charge is a single Title VII claim for retaliatory termination.</u> All other Title VII claims must be dismissed as to <u>all</u> Defendants for lack of subject matter jurisdiction.

### 2. Plaintiff's Title VII Claims Against Corporate Defendants Other than UFP Salisbury, LLC Fail as a Matter of Law Because Plaintiff Failed to Exhaust Administrative Remedies With Respect to Those Entities

"A Title VII civil action may only be brought against the *respondent* named in the charge." *McDaniel v. Greyhound Lines, Inc.*, No. 3:08-cv-130, 2008 WL 2704774, at *2 (W.D.N.C. July 7, 2008) (citing *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998)) (emphasis added); 42 U.S.C. Section 2000e-5(f)(1). Therefore, pursuant to Rule 12(b)(1), this Court should dismiss defendants not named as respondents in a plaintiff's EEOC charge. *McDaniel*, 2008 WL 2704774, at *3.[4] Here, Plaintiff's EEOC Charge identifies <u>one</u> respondent: "Universal Forest Products" in <u>Salisbury, North Carolina</u>.

---

[4] "'Title VII precludes a plaintiff from stating a claim against any defendant not named as a respondent in an EEOC charge.'" *Johnson v. Wal-Mart Stores East, L.P.*, No. 3:10cv659, 2011 WL 2183155, at *3 (W.D.N.C. June 6, 2011) (quoting *Schilling v. Rutherford Pediatrics, P.A.*, 346 F. Supp. 2d 828 (W.D.N.C. 2004)).

Plaintiff's EEOC Charge is devoid of <u>any</u> facts from which the EEOC could infer that the unnamed parties (i.e. The Universal Companies, UFP Eastern Division, Inc., and UFPI) also violated Title VII. *Brewster v. Shockley*, 554 F. Supp. 365, 368 (W.D. Va. 1983). Moreover, Plaintiff does <u>not</u> allege that UFPI (formerly The Universal Companies, Inc.) and UFP Eastern Division, Inc. had <u>notice</u> that Plaintiff's EEOC Charge allegations included allegations that <u>they</u> had violated Title VII. *See Mayes v. Moore,* 419 F. Supp. 2d 775 (M.D.N.C. 2006) ("[E]ach entity must know Plaintiff is suing them under Title VII, and without being named, the unnamed [defendant] ha[s] no reason to know Plaintiff, in suing [the named defendant], was actually suing all the related Defendants that are separate business organizations."). Indeed, Mr. Bravata's Affidavit confirms that UFPI (formerly The Universal Companies, Inc.) had no notice that Plaintiff was making any allegations against it until it received Plaintiff's November 2014 Complaint, and UFPI did not participate in the EEOC administrative process. (Bravata Aff. ¶21.)

Accordingly, Plaintiff's Title VII claims against all Corporate Defendants other than UFP Salisbury, LLC fail as a matter of law for lack of subject matter jurisdiction.

### c. Standard of Review for Dismissal Under 12(b)(6)

Rule 12(b)(6) permits courts to dismiss meritless cases that waste judicial resources and result in unnecessary discovery. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept the complaint's factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Estate Const. Co. v. Miller & Smith Holding*

15

*Co., Inc.,* 14 F.3d 213, 217-18 (4th Cir. 1994) (citations omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" such that they "raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). A claim should be dismissed unless it is filed within the applicable statute of limitations. *See McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127 (4th Cir. 1994).

Courts engage in a two-step process for determining whether a complaint meets *Twombly's* standard: "First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth….Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief." *Chambers v. Ashley Furniture Industries, Inc*., 2010 WL 4977102 (W.D.N.C. Nov. 9, 2010) adopted by 2010 WL 4975495 (W.D.N.C. Dec. 1, 2010). Here, application of this two-step process confirms that Plaintiff's Amended Complaint must be dismissed as to all claims but for her single Title VII retaliation claim against UFP Salisbury, LLC.

> **d. Defendants The Universal Companies, Inc., UFP Eastern Division, Inc. and UFPI Must Be Dismissed Because There is No Integrated Enterprise**

Plaintiff's Amended Complaint contains conclusory allegations that all four (4) Defendants were Plaintiff's employers (Doc. 15 at 2, ¶ 4) because each Defendant

16

purportedly acted as an "integrated enterprise among one another and as an employer of the Plaintiff." (Doc. 15 at 2, ¶ 4; Doc. 15 at 4, ¶ 11.) However, the allegations in Plaintiff's Amended Complaint fail support a finding of any integrated enterprise.

"An integrated enterprise situation exists where 'several companies may be considered so interrelated that they constitute a single employer.'" *Chambers v. Ashley Furniture Industries, Inc.*, 2010 WL 4977102, at *6 (WDNC Nov. 9, 2010) (*quoting Huskill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999)). In applying the integrated employer test, courts consider the following factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Id. While control of labor operations is the most critical factor, no single factor is conclusive.[5] Plaintiff's Amended Complaint allegations fail to establish any of these factors with respect to UFPI (formerly The Universal Companies, Inc.) or UFP Eastern Division, Inc.[6]

Plaintiff's Amended Complaint merely sets forth conclusory allegations - "upon information and belief" - regarding the purported "influence and control" that UFPI

---

[5] Notably, in situations where the court is asked to disregard the separate and distinct form of legal entities, the standards are narrow and rigorous, imposing a presumption of corporate separateness. *Davis. v. Ricketts*, 765 F.3d 823 (4th Cir. 2014) (*citing Robinson v. Terex Corp.*, 439 F.3d 465, 468 (4th Cir. 2006) (noting that, in the context of a parent-subsidiary relationship, "[s]eparate corporate entities should be disregarded only when there is some abuse of the privilege to operate as separate corporations to the detriment of a third party."))

[6] Plaintiff's Amended Complaint does not allege any facts regarding UFP Eastern Division, Inc.'s or The Universal Companies, Inc.'s relationship with UFP Salisbury, LLC as to any of these factors. Rather, Plaintiff's Amended Complaint focuses on UFPI.

17

allegedly exerted over UFP Salisbury, LLC.  (*See, e.g.,* Doc. 15 at 2, ¶ 6.)  These conclusory allegations should be disregarded as a matter of law.  *Chambers v. Ashley Furniture Industries, Inc*., 2010 WL 4977102 (W.D.N.C. Nov. 9, 2010) adopted by 2010 WL 4975495 (W.D.N.C. Dec. 1, 2010).

With respect to the few non-conclusory allegations (such as Plaintiff's allegations regarding purported plant visits by UFPI employees), these allegations fail to establish any of the factors required to support a finding of an integrated enterprise.  (*See, e.g.,* Doc. 15 at 3, ¶ 7.)  As set forth in Mr. Bravata's Affidavit, both UFP Eastern Division, Inc. and UFP Salisbury, LLC are wholly-owned subsidiaries of UFPI.  (Bravata Aff. ¶ 10.)  However, UFPI does not control the day-to-day operations of either entity, nor has it represented that either entity could act for or on behalf of UFPI.  (Id. at ¶¶11, 13.)  Further, each defendant is a separate legal entity that operates with separate managers, employees, assets, principal places of business, books, and records.  Indeed, these entities file their own income tax returns and direct their own day-to-day operations.  (Id. at ¶¶12, 14-15.)  UFPI merely provides limited administrative services to UFP Eastern Division, Inc. and to UFP Salisbury, LLC through intercompany agreements.  (Id. at ¶16.)  Thus, Plaintiff's Amended Complaint must be dismissed as to all Defendants because Plaintiff has not alleged facts to support a finding of an integrated enterprise.

### e.  Plaintiff's Equal Pay Act Claim Must Be Dismissed as to All Defendants

To make out a prima facie case under the EPA, the burden falls on the plaintiff to show that the skill, effort, and responsibility required in her job performance are equal to

18

those of a higher-paid male employee. *Wheatley v. Wicomico County, Maryland*, 390 F.3d 328 (4th Cir. 2004). Plaintiff must allege that she received lower pay than a male employee performing substantially equal work under equal conditions. *Ramirez-Rodriguez v. Wal-Mart Stores East, L.P.,* No. 5:21-CV-585, 2013 WL 3356566, at *2 (E.D.N.C. July 3, 2013) (citing *Strag v. Bd. of Trustees*, 55 F.3d 943, 947 (4th Cir. 1995)). Plaintiff's Amended Complaint alleges that she performed some shipping and receiving supervisor duties but was never promoted to that position or paid for that position, was the lowest paid employee within the shipping and receiving department, and was paid lower than male employees operating forklifts or loading trucks. (Doc. 15 at ¶¶ 17, 23.) These conclusory allegations fail to support an EPA claim.

First, Plaintiff's Amended Complaint identifies <u>no</u> male comparator who performed the <u>same</u> job as her (one equal in skill, effort, <u>and</u> responsibility) and was paid more than her. Plaintiff first attempts to compare herself to John Clark. However, Plaintiff's allegations confirm that Mr. Clark and Plaintiff did not have equal jobs. For example, Plaintiff's Amended Complaint admits that, although she was assigned to the first shift (Doc. 15 at ¶ 15), Mr. Clark was assigned to the second shift. (Doc. 15 at ¶ 21.) *See Corning Glass Works v. Brennan*, 417 U.S. 188, 204 (1974) (stating that "the Act contemplates that a male night worker may receive a higher wage than a female day worker"). Plaintiff also attempts to compare herself to John Corriher. However, Plaintiff's allegations confirm that Mr. Corriher and Plaintiff did not have equal jobs. Plaintiff's Amended Complaint alleges that Mr. Corriher operated a forklift. (Doc. 15 at

¶ 49.) Plaintiff nowhere alleges that she was qualified and/or licensed to operate a forklift, nor does she allege that she performed that job duty as a shipping and receiving clerk. (*See, e.g.* Doc. 15 at ¶ 19.) "[T]he identification of a comparator employed by the same employer and of the opposite gender is an indispensable requirement for a plaintiff bringing an [EPA] claim." *Morris v. Fordham University,* No. 03 Civ. 0566, 2004 WL 906248, at *4 (S.D.N.Y. Apr. 28, 2004) (dismissing under Rule 12(b)(6) an EPA claim where plaintiff failed to identify a proper comparator). Thus, because Plaintiff cannot identify a proper comparator, her EPA claim fails as a matter of law. *See id*; *Bass v. World Wrestling Fed'n Entm't, Inc.,* 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001) (dismissing, under Rule 12(b)(6), an EPA claim where plaintiff did not "offer a male counterpart with a higher salary").[7]

Moreover, although Plaintiff identifies males she claims held the *supervisor* position, Plaintiff's Amended Complaint does <u>not</u> allege that these individuals held a position *equal* to her but were paid more than Plaintiff. To the contrary, Plaintiff's Amended Complaint alleges that the supervisory position has *additional* and *different*

_____

[7] *Strag v. Bd. of Trs.,* 55 F.3d 943, 948 (4th Cir. 1995) (holding that in order to show equal skill, effort and responsibility a plaintiff "must identify a particular male 'comparator' for purposes of the inquiry."); *Alexander v. Marriott Int'l, Inc.,* No. 09CV2402, 2011 WL 1231029, at *5 (D. Md. Mar. 29, 2011) ("Because [plaintiff's] Amended Complaint fails to identify a male comparator who performed substantially equal work for more pay, [her] Equal Pay Act claim must be dismissed"); *Sherrod v. Prairie View A&M Univ.*, No. H-10-1858, 2011 WL 843936, at *9 (S.D. Tex. Mar. 8, 2011) (dismissing an EPA claim where plaintiff stated no facts to show "which male employees [were] being paid higher wages for performing 'equal work'"); *McClamb v. Rubin*, 932 F. Supp. 706 (M.D.N.C. 1996) (granting summary judgment where plaintiff failed to identify a male comparator).

20

responsibilities than the clerk position (including, for example, the management of other employees. (*Compare* Doc. 15 at ¶ 19 to Doc. 15 at ¶ 20.) Thus, Plaintiff's own allegations confirm that those performing the supervisory position did not perform work equal to Plaintiff.

Indeed, Plaintiff's allegations with respect to the male supervisors are that <u>she should have been promoted</u> from her non-supervisory job to a supervisory position but that the Company placed these males in the supervisory position instead. **Discriminatory promotion claims are beyond the scope of the EPA, which is focused only on the issue of unequal pay**. *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 130 (7th Cir. 1989) (promotion claim beyond EPA's scope); *accord Todaro v. Siegel Fenchel & Peddy, P.C.,* 04-CV-2939, 2009 WL 3150408, at *7 (E.D.N.Y. Sept. 25, 2009) (citing 42 U.S.C. § 2000e-2(a)(1)) (EPA's scope is "significantly narrower than Title VII's."); *see also Tompkins v. Allied Barton Sec. Servs.,* 09 Civ. 1954, 2010 WL 3582627, at *11 (S.D.N.Y. Aug. 2, 2010) (rejecting EPA claim where complaint centered on fact she was not promoted to and paid at higher level). Further, even if Plaintiff could base her EPA claim on these purportedly denied promotions (which she cannot), Plaintiff failed to allege <u>how</u> her position and the comparison positions are substantially equal. *See, e.g., Lehman v. Bergmann Associates, Inc.,* 11 F.Supp.3d 408 (W.D.N.Y. 2014).[8]

---

[8] In dismissing the plaintiff's EPA claim, the *Lehman* court reasoned:

> How was her position comparable or substantially similar? What responsibilities did they share? Without these facts, courts routinely

Finally, the statute of limitations for a claim under the Equal Pay Act is two (2) years, except where a plaintiff proves a willful violation, in which case the period is three (3) years. *Small v. North Carolina A&T State University*, 1:13CV248, 2014 WL 4105406, at *6 (M.D.N.C. Aug. 20, 2014) (citing 29 U.S.C. Section 255(a)). Plaintiff filed the instant lawsuit on November 21, 2014. Three years prior to November 21, 2014 is November 21, 2011. As noted above, none of the above-listed males is a comparator. Regardless, to the extent her EPA claim is based upon pay of males outside the statutory time period, such claims are barred as a matter of law.

### f. Plaintiff's Claim for Wrongful Discharge Must Be Dismissed as to All Defendants

Plaintiff's Third Cause of Action states that "Defendants terminated Plaintiff because she asserted her right not to be subject to unlawful employment practices and/or for opposing unlawful employment practices, which violated public policy." (Doc. 15 at 17, ¶ 116.) Thus, Plaintiff is attempting to allege a retaliatory discharge claim under North Carolina common law. Unfortunately, "no independent causes of action exist

---

dismiss EPA claims pled in this formulaic fashion. *See e.g., Arafat v. School Bd. of Broward Cnty.,* 549 Fed.Appx. 872, 875 (11th Cir.2013) (unpublished) (affirming district court's dismissal of EPA claim because the plaintiff "did not plead the facts comparing her skill, effort, and responsibility levels to those younger males who were allegedly paid more than her"); *Unger v. City of Mentor,* 387 Fed.Appx. 589, 595 (6th Cir.2010) (unpublished) ("[C]omplaint [asserting EPA claim] cites nothing more than the claim's legal elements, neglecting to provide any factual basis in support.").

*Lehman*, 11 F.Supp.2d at 420.

under North Carolina law for … harassment, whistleblowing and retaliation." *Ross v. Tennessee Commercial Warehouse, Inc.*, 3:14-cv-00391, 2014 WL 4672424, at *4 (W.D.N.C. Sept. 18, 2014); *Stratszheim v. Gerdau Ameristeel U.S., Inc.*, 2010 WL 883665, at *3 (W.D.N.C. March 5, 2010).[9]

### g. Plaintiff's Claims for Negligent Hiring, Retention, and Supervision Must Be Dismissed as to All Defendants

Under North Carolina law, a plaintiff must allege the following to set forth a claim for negligent hiring: "(1) a specific tortious act by the employee; (2) the employee's incompetence or unfitness; (3) the employer's *actual or constructive notice of the employee's incompetency or unfitness;* and (4) injury resulting from the employee's incompetency or unfitness." *Alexander v. Diversified Ace Services II*, *AJV*, No. 1:11CV725, 2014 WL 502496, at *18 (M.D.N.C. Feb. 7, 2014) (citing *White v. Consol. Planning, Inc.,* 166 N.C.App. 283, 292, 603 S.E.2d 147, 154 (2004) (emphasis added) (citing *Medlin v. Bass,* 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990).)) Plaintiff's Amended Complaint identifies only two employees who purportedly engaged in "tortious acts": (1) Phillip Hightower and (2) Mr. Corriher.

Plaintiff's Amended Complaint sets forth no allegations regarding the hiring of Mr. Hightower. Moreover, Plaintiff's allegations regarding Mr. Corriher's hiring are

---

[9] In addition, even if a retaliatory discharge claim existed under North Carolina law, Plaintiff's wrongful discharge claim fails as to all Defendants except UFP Salisbury, LLC because Plaintiff has not plead facts sufficient to support a finding that all Defendants were acting as part of an "integrated enterprise." (*See* Section IV(d), *supra.*)

merely conclusory statements that Defendants "were aware" or "should have been aware" of Mr. Corriher's purported criminal record prior to hiring him. (Doc. 15 at ¶¶ 44-46.) Plaintiff sets forth <u>no</u> facts to support a finding of actual or constructive knowledge by any Defendant. "The notice element requires that Plaintiff allege that Corporate Defendants knew or should have known about [Mr. Hightower's and Mr. Corriher's] dangerous propensities prior to hiring." *Alexander*, 2014 WL 502496 at *18 (citing *Medlin,* 327 N.C. at 592, 398 S.E.2d at 463; *Stanley v. Brooks,* 112 N.C.App. 609, 612, 436 S.E.2d 272, 274 (1993). "Without actual or constructive notice, Plaintiff's negligent hiring claim will fail." *Alexander*, 2014 WL 502496, at *19.

To state a claim for negligent retention and supervision, Plaintiff must show "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 249–50 (4th Cir.2000); *Smith v. Privette,* 495 S.E.2d 395, 398 (N.C.App.1998). North Carolina law requires that an employee "committed a tortious act resulting in plaintiff's injuries." *Waddle v. Sparks,* 414 S.E.2d 22, 29–30 (N.C. 1992). Title VII discrimination, harassment, and/or retaliation cannot serve as the "underlying tort" to support a claim for negligent retention and supervision. *McLean v. Patten Communities, Inc.,* 332 F.3d 714, 719 (4th Cir. 2003) (holding that neither retaliation nor harassment are "common law torts," and therefore cannot constitute the prima facie element of a tortious act for purposes of a negligent supervision claim). Because Plaintiff's tort claims of IIED and NIED fail (*see* Sections

IV(h), (i), *infra*), her claim for negligent retention or supervision of Hightower and/or Corriher also fails. *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 774 (4th Cir. 1997); *see also Webb v. Starbucks Corp.,* No. 1:07CV271, 2008 WL 4891106, at *12 (W.D.N.C. Nov. 12, 2008) (negligent retention claim could not go forward where underlying torts of IIED and NIED had been dismissed).

In addition, dismissal of Plaintiff's negligent hiring, retention, and supervision claim is warranted based upon Title VII preemption. In *Rhodes v. Municipal Emergency Services, Inc. and Eric A. Johnson*, No. 3:13-cv-00109, 2014 WL 2531594 (W.D.N.C. June 5, 2014), a sister North Carolina federal court dismissed state law torts of negligent retention and supervision (and IIED) based upon Title VII preemption:

> Plaintiff has also arguably asserted claims against MES for intentional infliction of emotional distress and negligent retention and supervision. "[W]here, as here, such supplemental state-law claims are based on the same conduct underlying the federal Title VII claims, the state law claims are preempted. *Mwabira–Simera v. Thompson Hospitality Services, LLP,* 2012 WL 959383 (D.Md. March 20, 2012); *Samuels v. Two Farms, Inc.,* 2012 WL 261196 (D.Md. Jan. 27, 2012); *Brown v. Children's Nat. Medical Center,* 773 F.Supp.2d 125, 138–39 (D.D.C. 2011); *Wade v. Washington Metropolitan Area Transit Authority,* 2005 WL 1513137 (D.D.C. June 27, 2005) ("The precisely drawn, detailed Title VII preempts the more general common law negligence remedy.") (citation omitted); *Crosten v. Kamauf,* 932 F.Supp. 676, 684 (D.Md. 1996). Moreover, "[w]hen, as here, the victim of a discriminatory act [does not] allege [ ] a harm apart from discrimination, Title VII ... preclude[s] her from suing under a common law tort theory to remedy that [same] injury." *Boyd v. O'Neill,* 273 F.Supp.2d 92, 96 (D.D.C. 2003). Thus, the court dismisses the state-law claims asserted against MES as they are preempted.

*Id.* at *9. Therefore, Plaintiff's negligent hiring, retention, and supervision claims should be dismissed on this additional ground.[10]

### h. Plaintiff's IIED Claim Must Be Dismissed as to All Defendants

In order to state an IIED claim under North Carolina law, a plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Plaintiff must allege "conduct [that is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986). North Carolina courts have "set a high threshold for a finding that conduct" meets this standard. *Dobson v. J.C. Penney Co.*, 134 N.C. App. 573, 578 (1999), *rev'd on other grounds*, 352 N.C. 77 (2000). This "standard of course excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible" but which is not actionable. *Walker v. Sullair Corp.*, 946 F.2d 888, *3 (4th Cir. 1991) (unpublished). Whether the conduct alleged in a complaint meets the extreme and outrageous standard is a question of law for the Court to decide. *Briggs v. Rosenthal*, 73 N.C. App. 672, 676 (1985). "North Carolina courts rarely 'find conduct in the employment context that will

---

[10] Similarly, as noted above, Plaintiff has also failed to state a claim for negligent hiring, supervision, and/or retention as to all Defendants except UFP Salisbury, LLC because Plaintiff failed to allege sufficient facts to demonstrate that those other entities were Plaintiff's employer or that they hired and/or employed Mr. Hightower or Mr. Corriher.

rise to the level of outrageousness necessary to support [an IIED] claim.'" *Smith v. Computer Task Grp., Inc.,* 568 F.Supp.2d 603, 621 (M.D.N.C.2008); *see also Faulkner v. Tyco Electronics Corp.*, 552 F. Supp. 2d 546, 558 (M.D.N.C. 2008); *Atkins v. USF Dugan, Inc.*, 106 F. Supp. 2d 799, 810-11 (M.D.N.C. 1999). The following are sample allegations that fell short of this threshold:

- *Martin v. Nationwide Mut. Ins. Co.*, 2001 WL 604192, at *11 (M.D.N.C. 2001): Plaintiff contended he was harassed because of his age, including specifically alleging (1) one supervisor became angry and punched a cardboard box in plaintiff's presence and asserted plaintiff better leave before he (the supervisor) engaged in regrettable conduct; (2) another supervisor cursed and threw a case file at plaintiff.

- *Wilson v. Southern Nat'l Bank,* 900 F. Supp. 803, 807-09, (W.D.N.C. 1995): Plaintiff alleged (1) a male co-worker put his hand on her hip, licked his lips and said, "umm . . . I'd like to have some of that"; (2) co-workers would hike their pants up to show the outline of their genitals; (3) employees brought "dirty cartoons" to work; (4) a younger co-worker told her he "preferred older women"; (5) a co-worker whacked plaintiff on her hip with a clipboard while singing a song about "hips and butts" which caused plaintiff to start crying; (6) plaintiff felt co-workers were teasing her because she complained to management; (7) after the co-workers were reprimanded, a female co-worker would close plaintiff's office door and ask her questions about what she was doing and why she did not talk to the reprimanded co-workers.

- *Guthrie v. Conroy,* 152 N.C. App. 15, 24, 567 S.E.2d 403, 410 (2002): Plaintiff alleged (1) a co-worker held her from behind and "touched or rubbed her neck and shoulders"; (2) a co-worker threw potting soil and water on plaintiff while she was planting flowers while simultaneously remarking he had "always wanted to see her in a wet T shirt"; (3) co-worker placed a Styrofoam "peanut" between the legs of a naked man statuette plaintiff had displayed at work and asked her "how she liked it."

- *Bendross v. Town of Huntersville,* 159 N.C.App. 228, *4-5 (July 15, 2013): Plaintiff's alleged that defendant strained working relationships with supervisors, subjected plaintiff to three internal investigations, disciplinary action, and slammed chair against wall during conference with plaintiff.

27

Here, Plaintiff's allegations do not describe the requisite outrageous, extreme, or utterly atrocious conduct required to successfully assert an IIED claim.[11]

### i. Plaintiff's NIED Claim Must Be Dismissed as to All Defendants

"To make out a claim for negligent infliction of emotional distress, a plaintiff must ... [allege] that the defendant was negligent, that it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress, and that the conduct, in fact, caused severe emotional distress." *Franklin v. Yancey Co.,* 1:09cv199, 2010 WL 317804, at *7 (W.D.N.C. Jan. 19, 2010) (quoting *Holleman v. Aiken,* 668 S.E.2d 579, 591 (N.C.App.2008)). "A plaintiff cannot simply restate facts regarding intentional behavior that form the basis for a claim of IIED to form a claim for NIED." *Johnston v. Leith, Inc.,* No. 5:10-CV-547, 2011 WL 1770434, at *10 (E.D.N.C. May 9, 2011) (citing *Mitchell v. Lydall, Inc.,* No. 93-1374, 1994 WL 38703, at *3 (4th Cir.1994) (claim for NIED is subject to dismissal when "the material factual allegations charge nothing but intentional acts."); *Bonham v. Wolf Creek Academy,* No. 1:10CV190, 2011 WL 576956, at *11 (W.D.N.C. Feb.9, 2011) (plaintiff stated insufficient facts to form a claim for NIED when plaintiff merely restated the same facts that were the basis for plaintiff's IIED claim)). Here, Plaintiff's IIED and NIED claims are based upon the same <u>intentional</u> alleged conduct. (*See* Doc. 15 at 19.) Thus, Plaintiff's NIED claim fails as a matter of

---

[11] Additionally, as set forth in Section IV(g) *supra*, because Plaintiff's IIED claim is based on the same conduct underlying her federal Title VII claims, the this claim is also preempted.

law.  *See Thompson v. Goodwill Indus. of the Southern Piedmont, Inc*., 3:13-cv-00005, 2013 WL 3816614, at *8 (W.D.N.C. July 22, 2013).

In addition, "even if plaintiff alleges negligent conduct, a plaintiff claiming NIED must still prove that her employer should have realized that its conduct involved an unreasonable risk of causing emotional distress."  *See Faulkner v. Tyco Electronics Corp.,* 552 F.Supp.2d 546, 559 (M.D.N.C.,2008) (citing *Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A.,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).  The plaintiff must also show that her employer was aware that such distress might result in illness or bodily harm.  *Id.; Johnston,* 2011 WL 1770434*,* at *10.  Here, Plaintiff does not allege facts sufficient to establish that Defendants should have realized their alleged conduct involved an unreasonable risk of causing emotional distress or that they were aware such distress might result in illness or bodily harm.  Therefore, Plaintiff's NIED claim should be dismissed on this additional ground.  *Id*. at *10-11.  *See Bratcher v. Pharmaceutical Prod. Dev., Inc.,* 545 F.Supp.2d 533, 545–546 (E.D.N.C. Apr.7, 2008).

Dated this the 13th day of March, 2015.

Respectfully submitted,

/s/Kelly S. Hughes
N.C. Bar No. 33439
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
E-mail: kelly.hughes@ogletreedeakins.com

/s/John A. Shedden
N.C. Bar No. 38499
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704.342.2588
E-mail: john.shedden@ogletreedeakins.com

## CERTIFICATE OF SERVICE

I, Kelly S. Hughes, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following person:

Edmund L. Gaines
HOMESLEY, GAINES, DUDLEY & CLODFELTER, LLP
316 East Broad Street
Statesville, NC 28677

*Attorney for Plaintiff*

Dated this the 13th day of March, 2015.

/s/Kelly S. Hughes
N.C. Bar No. 33439
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379
E-mail: kelly.hughes@ogletreedeakins.com