IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONNA A. KEENER,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        1:14CV982
                                    )
THE UNIVERSAL COMPANIES, INC.,      )
F/K/A UNIVERSAL FOREST              )
PRODUCTS, INC., UFP EASTERN         )
DIVISION, INC., F/K/A               )
UNIVERSAL FOREST PRODUCTS           )
EASTERN COMPANY, INC., UFP          )
SALISBURY, LLC, and UNIVERSAL       )
FOREST PRODUCTS, INC.,              )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

    Presently before this court is Defendants' Renewed Partial
Motion to Dismiss, asserting defenses for lack of subject matter
jurisdiction, lack of personal jurisdiction, and failure to
state a claim upon which relief may be granted.  (Doc. 18.)
Defendants indicate that they seek dismissal of all claims
against all Defendants, except for "one single claim of
retaliatory discharge under Title VII of the Civil Rights Act of
1964, as amended ('Title VII'), as to one Defendant: UFP
Salisbury, LLC."  (Id. at 1.)  Plaintiff has responded (Doc.

25), and Defendants filed a reply (Doc. 31).  This matter is now ripe for adjudication.

The parties agree that Defendants' motion to dismiss should be granted on several points, (see Defs.' Reply (Doc. 31) at 1-2; Pl.'s Resp. (Doc. 25) at 6, 16, 24), and this court finds it appropriate to grant Defendants' motion as to those issues.  However, this court finds that several issues require further factual findings that cannot be made at this stage of the proceedings.  Accordingly, for the reasons stated herein, this court will grant Defendants' partial motion to dismiss in part and deny the motion in part.

I.    **BACKGROUND**

Plaintiff Donna A. Keener ("Plaintiff") initiated this lawsuit asserting a cause of action under Title VII of the Civil Rights Act, codified as amended at 42 U.S.C. § 2000e, et. seq. ("Title VII"), the Equal Pay Act of 1963, codified as amended at 29 U.S.C. § 206, et seq. ("EPA"), and several causes of action based on state law.  (Amended Complaint ("Am. Compl.") (Doc. 15).)  Plaintiff named four interrelated entities within her complaint: (1) The Universal Companies, Inc., f/k/a Universal Forest Products, Inc.; (2) Universal Forest Products, Inc. ("UFPI"); (3) UFP Eastern Division, Inc. f/k/a Universal Forest

-2-

Products Eastern Company, Inc. ("UFP Eastern"); and (4) UFP
Salisbury, LLC ("UFP Salisbury").[1]  Each Defendant is organized
under the laws of the State of Michigan.  (Id. ¶¶ 5-10.)

Plaintiff attempts to proceed on several different theories
under Title VII, including wrongful termination, sexual
harassment, and retaliation.  As the general basis for her Title
VII claims based on wrongful termination along with her state
law claim of wrongful termination in violation of public policy,
Plaintiff contends that she was terminated from her position as
a shipping and receiving clerk on March 28, 2013, based on her
sex and "under a pretext of poor work performance."  (Id. ¶¶ 14-
15, 93.)  Plaintiff contends that she "consistently excelled in
her work with the Defendants" and that she "received good
performance evaluations every year and several evaluations that

---

[1] This court cannot resolve at this point whether The
Universal Companies, Inc. continues to exist or whether, as
Defendants contend, it became UFPI in 1993.  In her Response,
Plaintiff refers only to UFPI, acknowledging that Defendants
allege that The Universal Companies, Inc. and UFPI are the same
company.  This court will follow suit and construe all
references to "Universal Forest Products" within Plaintiff's
Amended Complaint to be referencing Defendant UFPI. Defendants
contend that this court should dismiss The Universal Companies,
Inc. from these proceedings.  (See Defs.' Mem. (Doc. 19) at 8
n.2.)  However, because Plaintiff has not fully conceded this
point or consented to a dismissal, (see Pl.'s Resp. (Doc. 25) at
6 n.2 (not contesting that The Universal Companies, Inc. and
UFPI are the same company)), this court will not dismiss this
party at this point.

-3-

she was exceeding expectations in her employment." (Id. ¶ 16.)
She claims that Phillip Hightower, plant manager for UFP
Salisbury, along with Kim Hildebrand who works in the human
resources department at UFPI, make the hiring and firing
decisions for UFP Salisbury, and as referenced below, Hightower
made derogatory comments based on Plaintiff's sex. (See id.
¶¶ 56-63.)

As the basis for her Title VII claim based on sexual
harassment and her state law claims of negligent hiring,
retention, and supervision and negligent infliction of emotional
distress, Plaintiff alleges that she was subjected to abusive
treatment by a co-worker, John Corriher, who threw heavy objects
such as paper weights in Plaintiff's direction, "spit pieces of
chewed up pills" in Plaintiff's face, and was "otherwise
offensive." (Id. ¶¶ 40-43.) Additionally, Phillip Hightower,
plant manager for UFP Salisbury, allegedly told Plaintiff that
"a woman's place should be barefoot and pregnant," when
Plaintiff asked to be considered for the shipping and receiving
supervisor position. (Id. ¶¶ 56-59.) Additionally, Hightower
"cussed the Plaintiff out over the telephone," "harass[ed] the
Plaintiff at any opportunity," "picked up a chair and threw it
across the room and started cussing," addressed Plaintiff in "a

-4-

disapproving manner," stared a Plaintiff in "a demeaning way,"
"sa[id] things like: 'it's time to clean the shack out, out with
the old and in with the new' or . . . 'we need some young blood
in here' referring to the Plaintiff working in the shipping and
receiving department," and forced Plaintiff to stop attending
the morning production meetings due to this alleged abusive
behavior. (Id. ¶¶ 70-75.)

Despite the fact that Plaintiff reported these incidents
along with other incidents involving the harassing individuals,
Plaintiff claims that no investigation was done and no remedial
steps were taken. (Id. ¶¶ 47-48, 59-65, 77.) Based on these
workplace conditions, Plaintiff contends that she "began
developing severe anxiety and depression and sought treatment
with medical professionals." (Id. ¶ 66.)

As the basis for her EPA claims, Plaintiff claims she was
"paid [a lower hourly wage] than any of her male counterparts in
the shipping and receiving department, and was paid lower than
even those male employees operating the forklift or loading the
trucks" and that this "disparity in pay was due to Plaintiff's
gender as a female." (Id. ¶ 23.) Plaintiff contends that,
despite her job title, she was expected to perform the work
required of the shipping and receiving supervisor, namely,

-5-

"run[ning] truck load reports based on number of man hours, run[ning] bonus reports, attend[ing] safety meetings, order[ing] the manifests to ensure loads were sent out on proper priority, and otherwise manag[ing] employees in the shipping and receiving department," but that she was not paid the appropriate amount for this position. (Id. ¶¶ 17, 20, 28.) Plaintiff alleges that, from October 7, 2012, until her termination in March 2013, she was paid $14.57 per hour. (See id. ¶ 18.)

Plaintiff names several comparators in support of her EPA claim. First, Plaintiff puts forward John Clark, who was a shipping and receiving clerk but worked on the second shift. (Id. ¶ 21.) Based on information and belief, along with her knowledge gained from "often [running] bonus reports," Plaintiff alleges that Clark was receiving between $17.00 and $18.00 an hour. (Id. ¶¶ 21-22.) Second, John Corriher, who was a shipping and receiving clerk with Plaintiff on the first shift, and who was less experienced than Plaintiff, allegedly received $16.00 per hour. (Id. ¶¶ 40, 52-53.) Third, Richard Helms was hired as the shipping and receiving supervisor, and was paid $18.00 per hour. (Id. ¶ 67-68.) Again, Plaintiff did not hold the title of shipping and receiving supervisor, but she contends that she performed the duties without receiving the same pay.

-6-

Plaintiff claims she was "wrongfully terminated on the basis of her gender and in retaliation for reporting and opposing discrimination and harassment in the workplace." (Id. ¶ 78.) After her termination, Plaintiff said she contacted a representative with the human resources department at UFPI and informed this representative of all incidents, including the harassment from Hightower and her termination. (Id. ¶ 77.) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge") on May 10, 2013. (Id. ¶ 12; id., Ex. B, EEOC Charge (Doc. 15-2).) The EEOC then issued a right to sue letter.

As mentioned above, there are several undisputed facts that allow for this court to dismiss certain aspects of Plaintiff's case. First, Plaintiff concedes that this court can dismiss Plaintiff's Fifth Claim for Relief based on Intentional Infliction of Emotional Distress. (See Pl.'s Resp. (Doc. 25) at 24.) Second, Plaintiff also concedes that she will not proceed on a theory of failure to promote or pay discrimination in her First Claim for Relief under Title VII. (See id. at 16.)

-7-

## II.  <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

Defendants claim that this court does not have personal jurisdiction over UFPI.  However, based on the facts presently before this court, this court finds that Plaintiff has made a prima facie showing that this court has specific subject matter jurisdiction over UFPI.[2]

Plaintiff ultimately bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence, but where the court relies on the pleadings, affidavits, and other papers to determine whether personal jurisdiction exists in the early stages of a matter, plaintiff must only make a prima facie showing of jurisdiction.  <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 294 (4th Cir. 2005); <u>In re Celotex Corp.</u>, 124 F.3d 619, 628 (4th Cir. 1997).  In adjudicating the motion, this court is to construe all disputed facts and draw all reasonable inferences from the proof in favor of jurisdiction.  <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003).

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied:

---

[2] The parties do not dispute that this court has personal jurisdiction over Defendants UFP Eastern or UFP Salisbury.

-8-

(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Id. Yet, "[b]ecause North Carolina's long-arm statute is construed to extend jurisdiction to the full extent permitted by the Due Process Clause," this court "need only inquire into whether 'defendant has such minimal contacts with the forum state [of North Carolina] that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Manley v. Air Canada, 753 F. Supp. 2d 551, 556 (E.D.N.C. 2010) (alteration in original) (quoting Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)).

There are two different types of personal jurisdiction, each with a different scope and with different standards that are required. General jurisdiction allows for a defendant to be sued in a state for any reason, regardless of where the relevant conduct occurred, but the plaintiff must show that the defendant has "continuous and systematic" contacts with the forum state. See CFA Inst. v. Inst. of Chartered Fin. Analysis of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Specific jurisdiction, on the other hand, "requires only that the relevant conduct have such a connection with the forum state that it is fair for the

-9-

defendant to defend itself in that state." Id. Plaintiff does
not allege "continuous and systemic" contacts with the forum
state sufficient to justify general jurisdiction over UFPI.[3] See
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
416 (1984); see also Daimler AG v. Bauman, 571 U.S. ___, ___,
134 S. Ct. 746, 758-59 (2014) (reversing a finding of general
jurisdiction over a foreign parent corporation based solely on
an in-state subsidiary's contacts with the forum state).
Instead, Plaintiff argues and this court assesses whether it has
specific jurisdiction over UFPI in relation to the particular
claims in this case.

"Specific jurisdiction . . . depends on an affiliation
between the forum and the underlying controversy, principally,

---

[3] To show that UFPI is not subject to the general jurisdiction
of this court, Defendants point out that:

> UFP[I] does not own any real property in North
> Carolina, does not operate a place of business in
> North Carolina, does not have a telephone number in
> North Carolina, does not market or sell products in
> North Carolina, does not manufacture or distribute
> products in North Carolina. UFPI is merely a holding
> and asset management company incorporated in Michigan
> with its only place of business in Michigan.

(Defs.' Mem. (Doc. 19) at 9-10 (citing Aff. of Scott T. Bravata
("Bravata Aff.") (Doc. 18-1) ¶¶ 3-9).) This court also notes
that there are no allegations that Defendants have not complied
with corporate formalities, so as to make UFP Salisbury the
alter ego of UFPI for purposes of imputing UFP Salisbury's
contacts to UFPI.

activity or an occurrence that takes place in the forum State
and is therefore subject to the State's regulation." <u>Goodyear
Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. ___, ___, 131
S. Ct. 2846, 2851 (2011) (internal citations omitted).
Plaintiff contends UFPI's "contacts are certainly more than
isolated or casual contacts" and UFPI employees had "direct
contact with the Plaintiff in North Carolina and did so over an
extended period of time," such that Defendants "availed
themselves of this forum so that Plaintiff's claims now arise
out of these contacts and it would be constitutionally
reasonable to assert personal jurisdiction over these
Defendants." (Pl.'s Resp. (Doc. 25) at 10.) As referenced
above, UFPI does not have sufficient contacts with North
Carolina to render it subject to the general jurisdiction of
this court. However, the minimum contacts analysis regarding
specific jurisdiction does not require the same level of
contacts. The questions instead are (1) whether the foreign
corporation has purposefully availed itself of the privilege of
conducting business in North Carolina, (2) whether the
plaintiff's claims arise out of those activities directed toward
the state, and (3) whether the exercise of specific jurisdiction
would be constitutionally reasonable. <u>ALS Scan, Inc. v. Digital</u>

Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).
This court considers each of these questions in turn.

First, this court must determine whether UFPI has purposefully availed itself of the privilege of doing business in North Carolina. In an attempt to show that it has not purposefully availed itself, UFPI asserts that it does not make its subsidiaries' personnel decisions or employee discipline decisions or direct their day-to-day operations, and it explains that it does not own real property in North Carolina or sell or manufacture products in North Carolina. (See Defs.' Mem. (Doc. 19) at 5-6; Bravata Aff. (Doc. 18-1) at 3-4.)[4] Instead, UFPI claims that it only "provides limited administrative services" to UFP Eastern and UFP Salisbury and only does so through "intercompany agreements." (See Defs.' Mem. (Doc. 19) at 6; Bravata Aff. (Doc. 18-1) at 5.)

To show that UFPI has purposefully availed itself, Plaintiff alleges that UFPI administered "all human relations matters" for UFP Salisbury during this period. (Am. Compl. (Doc. 15) ¶ 6.) Specifically, Plaintiff claims that UFPI

---

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

"handles and controls all human resources matters including employee complaints, employee relations, training, compensation, recruiting and management of all employees at the Salisbury plant." (Pl.'s Resp. (Doc. 25) at 5.) In support of this claim, Plaintiff attaches a disciplinary report issued against her, and "Universal Forest Products, Inc." is stamped at the bottom of the page, (see id., Ex. C, Disciplinary Report (Doc. 25-3)), along with an email from staff counsel for UFPI, suggesting that UFPI was engaging in or at least had some role in the EEOC conciliation process with Plaintiff. (See id., Ex. A, Email from Brian Pearson (Doc. 25-1).)

Plaintiff also alleges that UFPI sent officers and agents to visit UFP Salisbury's plant at least twice a year, including Mike Glenn, who was then CEO; Kim Hildebrand, Director of Human Resources; Matthew Missad, CEO; and Chris Joseph, Regional Manager. (Pl.'s Resp. (Doc. 25) at 5 (citing Am. Compl. (Doc. 15) ¶¶ 7, 32, 64)). During these visits, Plaintiff reports UFPI employees "would inspect the plant, give out service awards and awards of recognition to employees, and employee of the year awards." (Id.) Therefore, based on these allegations and accepting them as true, Plaintiff has shown that UFPI provides services to UFP Salisbury within the state of North Carolina,

that UFPI has directed its activities at North Carolina in more than a random, fortuitous, or attenuated way, that UFPI should have been able to anticipate being sued in North Carolina, and that UFPI has purposefully availed itself of the privilege of conducting business in North Carolina.  See Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004).[5]

Having found that UFPI has purposefully availed itself of conducting business in North Carolina, this court must determine whether Plaintiff's claims arise out of these services. Defendants do not offer a specific argument as to this prong of specific jurisdiction, relying solely on their minimal contacts with North Carolina.  (See Defs.' Mem. (Doc. 19) at 11-12.) Plaintiff's claims all relate to employment discrimination by employees of UFP Salisbury.  These allegations alone would not be sufficient to show that Plaintiff's claims arise out of UFPI's contacts with the state.  However, in both her federal and state law claims, Plaintiff contends that Defendants allowed harassment and other forms of discrimination to continue, despite the fact that Plaintiff claims she complained directly

---

[5] Because it appears that there are disputed facts at least, this court will deny the motion without prejudice, allowing Defendants to raise their issue again following discovery, should additional facts suggest that this court's finding as to a prima facie case of jurisdiction is not supported by resolution of factual disputes.

-14-

to Chris Joseph, Regional Manager for UFPI, and Kim Hildebrand, Director of Human Resources Services for UFPI, about sex discrimination within the plant and about being overlooked for multiple positions. (Id. ¶¶ 31, 62-63.) Plaintiff has alleged that UFPI provides human resource services to UFP Salisbury and UFP Eastern and manages the grievance and discipline processes, and because Plaintiff has made claims based on her employment, the conditions of her employment, and her ultimate discharge, this court finds that her claims arise out of Defendant UFPI's contacts with North Carolina.

Finally, having found UFPI purposefully availed itself of the privilege of conducting activities in North Carolina such that the minimum contacts requirement is met, and that the instant claims arise out of those activities, this court must consider whether it would be constitutionally reasonable to exercise personal jurisdiction over UFPI. The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 47 (1985). UFPI, a Michigan-based corporation, will face

some inconvenience in litigating a case in North Carolina. Nonetheless, this inconvenience alone does not create a "compelling case" that exercising jurisdiction over UFPI would be constitutionally unreasonable.

Accordingly, this court finds that Plaintiff has made a prima facie showing that this court can exercise specific jurisdiction over UFPI. Plaintiff will ultimately be required to prove that this court can exercise jurisdiction by a preponderance of the evidence, but at this point, this court finds that it must deny Defendant's motion to dismiss for lack of personal jurisdiction.

## III. <u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Defendants assert that this court does not have subject matter jurisdiction to hear several of Plaintiff's claims under Title VII because Plaintiff did not provide sufficient information in her Charge of Discrimination filed with the Equal

-16-

Employment Opportunity Commission.[6]  Specifically, Defendants

contend that (1) Plaintiff has not exhausted her administrative

remedies for a hostile work environment claim, and (2) all

parties, except for Defendant UFP Salisbury, were not put on

notice of the EEOC Charge because they were not explicitly

listed in Plaintiff's EEOC Charge.  This court finds that

Defendants were all given adequate notice, giving this court

subject matter jurisdiction over Plaintiff's Title VII claims of

---

[6] Defendants in their Reply seem to add on an additional basis for dismissal based on lack of subject matter jurisdiction.  Defendants claim that Plaintiff's claims based on her employer's negligence are within the exclusive jurisdiction of the North Carolina Workers' Compensation Act, N.C. Gen. Stat. § 97-1, et seq.  (Defs.' Reply (Doc. 31) at 11-13.) North Carolina courts as well as courts in this district have held that "[discrimination] is not a risk to which an employee is exposed because of the nature of the employment, but is a risk to which the employee could be equally exposed outside the employment.  Therefore, [the plaintiff's claim] is neither covered nor barred by the [WCA]." Hogan v. Forsyth Cnty. Country Club Co., 79 N.C. App. 483, 496, 340 S.E.2d 116, 124 (N.C. App. 1986) (citations omitted); see also Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) ("Although Plaintiff's emotional distress may result from incidents that occurred at work, her claim for negligent infliction is not barred by the Act's exclusivity provision."); Ridenhour v. Concord Screen Printers, Inc., 40 F. Supp. 2d 744 (M.D.N.C. 1999) (holding that exclusivity provision does not bar a claim of negligent infliction of emotional distress based on sexual harassment).  This court finds these cases persuasive to these facts and will not dismiss Plaintiff's claims based on this theory.  Plaintiff seeks to strike this argument because Defendants raised this for the first time in their Reply. (Pl.'s Mot. to Strike (Doc. 32).) However, because this court is dismissing this argument on the merits, this court will deny the motion to strike.

-17-

wrongful discharge and retaliation, but this court also finds that Plaintiff has not exhausted her hostile work environment claim and will not be allowed to recover on that theory.

### A.   Exhausting Administrative Remedies

Defendants claim that Plaintiff cannot proceed on her Title VII claim under the theory of a hostile work environment because Plaintiff has not exhausted this claim.  This court agrees.

Defendants are correct that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."  Jones v. Calvert Grp, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).  "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."  Jones, 551 F.3d at 300.

A charge is sufficient "if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)). However, a claimant fails to exhaust if the "administrative charge[] reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Id. at 506.

In her EEOC Charge, Plaintiff checked the boxes of discrimination based on sex and retaliation. (See Am. Compl., Ex. B, EEOC Charge (Doc. 15-2).) The parties do not dispute that Plaintiff has exhausted a claim for discriminatory and retaliatory discharge, and this court agrees that Plaintiff has exhausted that claim. In her EEOC Charge, Plaintiff lists her termination date, March 28, 2013, under the section entitled "Date(s) Discrimination Took Place." (See id.) She also specifically lists her termination in the "Particulars" section of the EEOC Charge, seems to claim that she was fired under the pretext of poor performance, represents she was replaced by a male employee, and asserts she was "discriminated against because of [her] sex (F) and subjected to retaliation due to [her] protected activities." (See id.) This court finds these

-19-

allegations are sufficient to exhaust her claims for
discriminatory and retaliatory discharge.

However, in addition to claiming discriminatory and
retaliatory discharge, Plaintiff claims she was the victim of a
hostile work environment based on her sex in violation of Title
VII.  Plaintiff asserts in her Amended Complaint, as part of her
one Title VII claim, that she "formally complain[ed] of . . .
harassment to multiple members of management and human
resources," that "Defendants failed to conduct any sort of
reasonable investigation or take any appropriate or corrective
action with respect to the Plaintiff's complaints," and that
"Plaintiff continued to experience harassment and a hostile
working environment."  (Am. Compl. (Doc. 15) ¶¶ 90-92.)
Defendants contend that these allegations were not exhausted in
Plaintiff's EEOC Charge.

Apart from the allegations in the EEOC Charge concerning
Plaintiff's termination, Plaintiff's EEOC Charge states, in its
entirety: "I am a female. I began working for Respondent on or
about October 7, 2004. I worked as a Shipping/Receiving Clerk.
During my employment, I was discriminated against due to my sex
(female). I complained about the discrimination but Respondent
took no action." (EEOC Charge (Doc. 15-2).)  Aside from the

-20-

reference to Respondent and its lack of action, Plaintiff's EEOC Charge does not specify how she was discriminated against during her employment or who committed the discriminatory acts. The question, then, is whether this is sufficient to administratively exhaust Plaintiff's claim of hostile work environment. This court, using the factors provided in Chacko, finds that these allegations were insufficient for exhausting the hostile work environment claim Plaintiff brings in this court.

Looking to the relevant time frames within the EEOC Charge and the Amended Complaint, this court finds it is a close issue as to whether Plaintiff's EEOC Charge reflects the continuing nature of the action alleged in the Amended Complaint. Plaintiff did not check the "Continuing Action" box within her EEOC Charge and, as referenced above, lists only the date of her termination as the "Date(s) Discrimination Took Place." (See id.) Plaintiff's Amended Complaint now asserts that she was the victim of a continuing violation of her rights under Title VII. (See Am. Compl. (Doc. 15) ¶ 89.) Moreover, she alleges discriminatory actions taken by employees in June 2012, almost two years before the date alleged in the EEOC Charge. (See id. ¶ 71.) Despite these disparities between the EEOC Charge and

the Amended Complaint, Plaintiff's EEOC Charge does specify that she was discriminated against based on her sex "[d]uring [her] employment."  (See EEOC Charge (15-2).)  This allegation, while not specific, did put the EEOC and Defendants on notice that Plaintiff was complaining of a period besides the date she was terminated.

Although the relevant time frame is a close issue, this court finds that Plaintiff's EEOC Charge and her Amended Complaint do not allege the same actors.  The only "actor" alleged in Plaintiff's EEOC Charge is "Respondent," identified in other parts of the EEOC Charge as "Universal Forest Products."  (Id.)  The Amended Complaint sets out a pattern of harassment by two individual employees - Phillip Hightower, plant manager, and John Corriher, one of Plaintiff's co-workers.  (See, e.g., Am. Compl. (Doc. 15) ¶¶ 40-43, 59-77.)  This court finds that the EEOC would not have been aware of harassing behavior committed by Corriher, a co-worker, without some reference to Corriher in the EEOC Charge.  As a result, Plaintiff has not exhausted a hostile work environment claim based on any actions committed by Corriher.  On the other hand, as Hightower was plant manager and "ma[de] hiring and firing decisions for the Salisbury plant" (see id. ¶ 57), the EEOC

would have had more reason to examine his actions during Plaintiff's employment.

Although Hightower's discriminatory actions, as plant manager, may have been the subject of a reasonable investigation based on the contents of the EEOC Charge, this court finds that Plaintiff's EEOC Charge and her Amended Complaint allege unrelated actions, rendering Plaintiff's hostile work environment claim unexhausted. The EEOC Charge does not mention sexual harassment or hostile work environment, not does it cite any actions that would be indicative of sexual harassment or hostile work environment. (EEOC Charge (Doc. 15-2).) Instead, the EEOC Charge merely says that Plaintiff was "discriminated against due to [her] sex." (Id.) As other district courts within this circuit have found, "a reasonable investigation of Plaintiff's statement that she had been discriminated against on the basis of sex would not have 'uncovered the factual allegations' giving rise to Plaintiff's claim of sexual harassment." See, e.g., Baiden-Adams v. Forsythe Transp., Inc., 969 F. Supp. 2d 422, 430 (E.D. Va. 2013) (quoting Chacko, 429 F.3d at 512); see also DeLeon v. Enter. Leasing Co.-Se., No. 5:97-CV-972-H 2, 1998 WL 469900, at *3 (E.D.N.C. May 22, 1998) (noting sexual harassment and a sexually hostile work

-23-

environment are "distinct from other forms of sex discrimination" and dismissing hostile work environment claim for failure to exhaust); <u>Bryant v. Better Bus. Bureau of Greater Md., Inc.</u>, 923 F. Supp. 720, 746 (D. Md. 1996) (noting "it is unreasonable to assume that the mere mention of 'sex' in the administrative charge will invoke an investigation into all possible basis of discrimination based on sex by the employer"); <u>Logan v. Colonial Williamsburg Hotel Props.</u>, 941 F. Supp. 60, 62 (E.D. Va. 1996) (finding "the facts alleging sexual harassment could not be inferred from the allegations in the EEOC charge and would not have been uncovered absent specific allegations in the charge"). Because Plaintiff alleges different kinds of prohibited action in the EEOC Charge and in her Amended Complaint, this case is distinguishable from <u>Sydnor</u>, a case where an ADA plaintiff was allowed to claim her employer refused to provide full duty work in a wheelchair during formal litigation, even though her EEOC Charge alleged that the employer refused to allow her to perform light duty. <u>See Sydnor v. Fairfax Cnty., Va.</u>, 681 F.3d 591, 595-96 (4th Cir. 2012). Where in <u>Sydnor</u>, the Fourth Circuit recognized that the "type of prohibited action alleged . . . remained consistent throughout,"

Case 1:14-cv-00982-WO-LPA   Document 36   Filed 09/01/15   Page 24 of 38

see id. at 595, here, the allegations are not reasonably related.

Ultimately, this court observes that the EEOC Charge focuses on Plaintiff's discharge and makes only a conclusory statement that "[d]uring [her] employment, [she] was discriminated against due to [her] sex." (See EEOC Charge (Doc. 15-2).) As such, these allegations were not reasonably related to the claims of ongoing hostile work environment created by supervisor and co-worker actions and statements. See Chacko, 429 F.3d at 512-13. While the Fourth Circuit has long recognized that EEOC charges "must be construed with utmost liberality," see Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988), the Fourth Circuit has also cautioned that this court is "not at liberty to read into administrative charges allegations they do not contain." See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013). Even a liberal reading of Plaintiff's EEOC Charge provides no indication that Plaintiff was the victim of ongoing hostile work environment based on her sex. As a result, that claim has not been exhausted and Plaintiff may not proceed on that theory.

Although this court has found that Plaintiff has not exhausted her hostile work environment claim, these allegations could nonetheless possibly serve as evidence to support her properly asserted sex discrimination claim. See Evans, 80 F.3d at 963 (citing United Air Lines v. Evans, 431 U.S. 553, 558 (1977)); cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (explaining that Title VII does not "bar an employee from using the prior [untimely] acts as background evidence in support of a timely claim").

## B. Naming All Defendants

Defendants also contend that UFPI and UFP Eastern were not given adequate notice of Plaintiff's claims of discrimination based on who Plaintiff claimed was her employer in her EEOC Charge, and as a result, Defendants claim this court does not have subject matter jurisdiction over these entities for any of Plaintiff's Title VII claims. Again, this court disagrees.

The applicable regulation states that a charge "should contain . . . (2) [t]he full name and address of the person against whom the charge is made, if known," 29 C.F.R. § 1601.12(a)(2), but that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties." Id.

-26-

§ 1601.12(b).  "The naming requirement serves two purposes, and is not a mere technicality: 'First, it notifies the charged party of the asserted violation.  Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law.'"  Alvarado, 848 F.2d at 458–59 (quoting Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969)). Nonetheless, courts are sympathetic to the difficulties of mastering the organizational structure of an employer and naming all corporate entities that may have been involved in the discriminatory conduct.  See id. at 460.

Moreover, "district courts throughout the Fourth Circuit have recognized a 'substantial identity' exception to Title VII's naming requirement where unnamed defendants are substantially identical, though not necessarily outright identical, to the named defendant."  Alexander v. Diversified Ace Servs. II, AJV, No. 1:11CV725, 2014 WL 502496, at *8–9 (M.D.N.C. Feb. 7, 2014) (citing, inter alia, Mayes v. Moore, 419 F. Supp. 2d 775, 782–83 (M.D.N.C. 2006); Mayo v. Questech, Inc., 727 F. Supp. 1007, 1010–12 (E.D. Va. 1989)).  Under the substantial identity exception, courts generally consider four factors:

-27-

> 1) whether the role of the unnamed party could through
> reasonable effort by the complainant be ascertained at
> the time of the filing of the EEOC complaint; 2)
> whether, under the circumstances, the interests of a
> named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary
> conciliation and compliance it would be unnecessary to
> include the unnamed party in the EEOC proceedings; 3)
> whether its absence from the EEOC proceedings resulted
> in actual prejudice to the interests of the unnamed
> party; and 4) whether the unnamed party has in some
> way represented to the complainant that its
> relationship with the complainant is to be through the
> named party.

See Mayes, 419 F. Supp. 2d at 783 (citing Glus v. G.C. Murphy

Co., 562 F.2d 880, 888 (3d Cir. 1977)); Mayo, 727 F. Supp. at

1011 (citing Glus, 562 F.2d at 888). Courts have often

emphasized the second and third factors as "the most

important[,] as they are most reflective of the two-fold purpose

of the naming requirement," that is, providing notice and an

opportunity for voluntary conciliation. See Alexander, 2014 WL

502496, at *9.

In her EEOC Charge, Plaintiff listed "Universal Forest

Product" as the respondent in her EEOC Charge. (EEOC Charge

(Doc. 15-2).) Plaintiff then gave a Salisbury address for the

Respondent. (See id.) Defendants contend that UFPI and UFP

Eastern did not receive notice of the EEOC Charge because only

UFP Salisbury was listed as a respondent. (Defs.' Mem. (Doc.

-28-

19) at 14-15.)  However, this court does not find this argument persuasive.

There is a threshold question of whether UFPI and UFP Eastern were identified in Plaintiff's EEOC charge by her reference to "Universal Forest Products" as her employer.  The full names of the UFPI and UFP Eastern are "Universal Forest Products, Inc." and "Universal Forest Products Eastern Division, Inc."  The fact that Plaintiff gave the physical address where she works as the address for her employer does not change the fact that Plaintiff could have been referring to UFPI and UFP Eastern by stating that she was employed by "Universal Forest Products."  Thus, by identifying "Universal Forest Products" as her employer, Plaintiff sufficiently identified the parties so as to give this court subject matter jurisdiction.

Moreover, even assuming UFPI and UFP Eastern were not sufficiently named in the EEOC Charge, application of the substantial identity test shows that naming UFP Salisbury in her EEOC Charge satisfied the statutory requirements, such that this court can exercise subject matter jurisdiction over Plaintiff's Title VII claims against UFPI and UFP Eastern.  As to the second factor of the substantial identity test, the interests of UFP Salisbury - an entity that all parties agree is named in the

-29-

EEOC Charge - are so similar to the interests of UFPI and UFP Eastern, based on Plaintiff's allegations, to have rendered UFPI and UFP Eastern's inclusion in the EEOC proceedings unnecessary. Moreover, this court has not identified any source of prejudice to UFPI or UFP Eastern because they were arguably not mentioned in Plaintiff's EEOC Charge.

Moreover, despite an allegation by Defendants' counsel that UFPI did not engage in the conciliation process on its own behalf and did not know Plaintiff's allegations were being levied against UFPI until Plaintiff filed her complaint in November 2014, (see Bravata Aff. (Doc. 18-1) ¶ 21), it appears that Plaintiff had some knowledge of the conciliation process as it was taking place. Plaintiff has submitted June 17, 2013 and July 1, 2013 emails from one of UFPI's staff counsel to an EEOC official during the conciliation process, in which counsel provided a position statement and supporting documentation in response to Plaintiff's allegation. (See Email from Brian M. Pearson (Doc. 25-1). But see Defs.' Reply, Ex. E, Defendants' Communication with EEOC (Doc. 31-6) at 6-7 (identifying Brian Pearson as staff counsel for UFP Salisbury).) This evidence does not definitively prove that UFPI was given notice and an opportunity to engage in the conciliation process, but this

court finds at this point that Plaintiff has stated sufficient facts to plausibly assert that she exhausted the applicable administrative procedures, such that this court has subject matter jurisdiction over her Title VII claims against UFPI.

Similarly, this court finds that this court has subject matter jurisdiction over Plaintiff's Title VII claims against UFP Eastern. Defendants have submitted Plaintiff's redacted W-2s, and these W-2s list UFP Eastern as Plaintiff's employer from 2004 to 2010. (See Defs.' Reply, Ex. A, Plaintiff's Redacted W-2s (Doc. 31-2) at 2-8.) UFP Salisbury is then listed as Plaintiff's employer from 2012 to 2013. (See id. at 10-11.) Given that Plaintiff performed the same job throughout this time period, these W-2s suggest some sort of relationship between UFP Salisbury and UFP Eastern, and based on this relationship, their interests are "likely similar enough that, for purposes of obtaining voluntary conciliation and compliance, it would be unnecessary to include [both] in the proceedings." See Alexander, 2014 WL 502496, at *10. Therefore, it would take an unduly narrow reading of the statute for this court to find that Plaintiff has not exhausted its claims against UFP Eastern because it gave the physical address of the UFP plant where she works.

Accordingly, this court will deny Defendants' motion based on lack of subject matter jurisdiction.  However, if after discovery the evidence shows that UFPI and UFP Eastern did not have notice or were not substantially identical to UFP Salisbury, then this claim would be subject to dismissal against those Defendants.

## IV.  <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

In addition to making jurisdictional arguments, Defendants contend that Plaintiff has failed to state a claim upon which relief may be granted on all of her claims, except for one claim of sex discrimination against UFP Salisbury.[7]

Defendants argue that several of Plaintiff's state law claims can be dismissed as a matter of law.  First, Defendants claim that Plaintiff's claim of wrongful discharge in violation of North Carolina public policy should be dismissed.  (Defs.' Mem. (Doc. 19) at 22-23.)  The policy statement provided in Section 143-422.2 of the North Carolina Statutes - which says it is against the public policy of North Carolina to discriminate against an employee based on sex - applies to common law wrongful discharge claims.  See McLean v. Patten Cmtys., Inc.,

---

[7] Both parties agree that Plaintiff's claim for intentional infliction of emotional distress can be dismissed.  Accordingly, this court will grant Defendants' Partial Motion to Dismiss as to this claim.

-32-

332 F.3d 714, 720 (4th Cir. 2003). Thus, when Plaintiff states in her complaint that she was "discriminat[ed] against . . . based on her sex and terminat[ed] . . . through discriminatory practices," (see Am. Compl. (Doc. 15) ¶ 115), she has sufficiently stated a claim for sexually-discriminatory discharge in violation of North Carolina public policy.

Nonetheless, this court does agree with Defendants' argument that Plaintiff does not have a valid claim for <u>retaliatory</u> discharge in violation of North Carolina public policy. As a court in this district has previously explained,

> [A]lthough the state legislature has enacted statutes prohibiting retaliation against employees [see N.C. Gen. Stat. § 95-241], the protection afforded by these statutes is limited to the areas of law set forth therein. . . . [E]xtension of the public policy exception to include protection against retaliation for participation in other activities should come, if at all, from the North Carolina courts.

<u>Mullis v. Mechs. & Farmers Bank</u>, 994 F. Supp. 680, 688 (M.D.N.C. 1997). Therefore, Plaintiff's wrongful discharge claim will proceed, but it may not be based on her allegations of retaliation, unless Plaintiff can plausibly allege that she is

proceeding under the Retaliatory Employment Discrimination Act, codified at N.C. Gen. Stat. § 95-241.[8]

Second, Defendants argue that Plaintiff's negligent supervision and retention claim should be dismissed as a matter of law. (Defs.' Mem. (Doc. 19) at 23-26.) Plaintiff has used the allegations of sexual harassment, retaliation, discriminatory discharge, and the assaultive conduct committed by Defendants' employees as a basis for her negligent retention and supervision claim. (See Am. Compl. (Doc. 15) ¶ 123.) To state a claim for negligent retention and supervision, Plaintiff must allege that an employee committed a "specific tortious act." Johnston v. Leith, Inc., No. 5:10-CV-547-FL, 2011 WL 1770434, at *6 (E.D.N.C. May 9, 2011). As a result, the Fourth Circuit has held that negligent retention or supervision claims cannot be based on "harassment or retaliation on account of race or sex," because "neither harassment [n]or retaliation [are] common law torts in North Carolina." See McLean, 332 F.3d at 719. Based on this precedent, Plaintiff will not be able to rely

---

[8] Plaintiff cites N.C. Gen. Stat. § 92-151, but this court could not find a corresponding statute. If Plaintiff intended to cite N.C. Gen. Stat. § 95-151, which prohibits discrimination based on sex, race, and religious affiliation against any "employer, employee, or any other person related to the administration" of the Occupational Safety and Health Act of North Carolina, this court is unsure how this statutory prohibition on discrimination is relevant here.

on her complaints of harassment and retaliation as a basis for her negligent retention and supervision claim. However, Plaintiff has based her negligent retention and supervision claim on common law torts that were allegedly committed against her, including the "assault" that John Corriher and Phillip Hightower allegedly committed against Plaintiff. (See Am. Compl. (Doc. 15) ¶ 123.) Because Plaintiff alleges that Defendants' employees committed a common law tort, this court finds that Plaintiff has stated a claim of negligent retention and supervision.

Third, Defendants claim that Plaintiff's state law claims are preempted by Title VII. (Defs.' Mem. (Doc. 19) at 25-26.) Defendants cite several district court cases in support of this argument. However, those cases do not suggest that dismissal is proper at this stage of the proceeding. For instance, one case cited by Defendants noted that the plaintiff asserted that the duty to provide a workplace free of discrimination arose from Title VII and that the court would not allow the plaintiff to proceed on a duplicative cause of action based in negligence. See Mwabira-Simera v. Thompson Hosp. Servs., LLP, Civil Action No. WMN-11-2989, 2012 WL 959383, at *5 (D. Md. Mar. 20, 2012). Yet, in this case - although there appears to be overlap between

Plaintiff's negligent supervision and retention and negligent infliction of emotional distress claims and her Title VII and EPA claims – there are allegations, such as the alleged physically assaultive behavior of John Corriher that could provide for a cause of action under state law that would not fall within the purview of Title VII.  Additionally, some of the cases cited by Defendants had much more substantial factual records than this court currently has, and these facts helped those courts determine that the causes of action were preempted.  See Rhodes v. Johnson, No. 3:13-cv-00109-MOC-DSC, 2014 WL 2531594, at *9 (W.D.N.C. June 5, 2014).  Accordingly, this court does not find Plaintiff's claims are preempted by Title VII at this juncture.

Defendants also argue that Plaintiff has not stated a plausible claim on her remaining causes of action. Specifically, Defendants contend (1) that Plaintiff makes only conclusory allegations that all Defendants are an integrated enterprise and thus all potentially liable under Title VII, (2) that Plaintiff has not asserted male comparators in positions of equal skill, effort, and responsibility to state a plausible EPA claim, (3) that some of the bases for Plaintiff's EPA claim are barred by the statute of limitations, (4) that Plaintiff, in her claims of

negligent hiring, retention, and supervision has made only conclusory allegations as to what Defendants should have known about Corriher's purported criminal record, and (5) that Plaintiff has set forth only intentional acts, undercutting her claim of negligent infliction of emotional distress. (Defs.' Mem. (Doc. 19) at 16-25, 28-29.)

All of the issues cited by Defendants as to the merits of Plaintiff's remaining claims will all require resolution of factual matters, and this court is not to resolve such factual disputes at this stage. This court has reviewed all of Plaintiff's claims and finds that none of the claims are clearly defective based on the face of Plaintiff's Amended Complaint. Therefore, this court will deny Defendants' motion to dismiss as to these claims.

V.   <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendants' Renewed Partial Motion to Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Fifth Claim for Relief based on Intentional Infliction of Emotional Distress is **DISMISSED** and the court will not allow Plaintiff to proceed on the theories of sexual harassment/hostile work environment, failure to promote, or pay discrimination in her First Claim for Relief under Title VII.

-37-

All other requested forms of relief within Defendants' Renewed Partial Motion to Dismiss are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendants' Reply (Doc. 32) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' request to modify the case caption is **DENIED WITHOUT PREJUDICE.**

This the 1st day of September, 2015.

_____
United States District Judge